# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-24-00453-CR

---

**Lonnie H. Mansolo, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 22ND DISTRICT COURT OF COMAL COUNTY
### NO. CR2023-241A, THE HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury found appellant Lonnie Mansolo guilty of one count of continuous sexual abuse of a young child and two counts of indecency with a child by sexual contact. *See* Tex. Penal Code §§ 21.02(b), .11(a)(1). The jury assessed his punishment at life imprisonment for the continuous-sexual-abuse count and twenty years' confinement and a $10,000 fine for each indecency count. The trial court sentenced Mansolo in accordance with the jury's verdicts and ordered that the sentences run concurrently. In five issues on appeal, Mansolo contends that he was subjected to multiple punishments for the same offense in violation of the Double Jeopardy Clause, that the evidence was insufficient to support the jury's guilty verdicts, that the trial court's jury charge for the guilt-innocence phase of trial was erroneous, and that the State failed to notify him of its outcry witness in advance of trial as required by article 38.072 of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 38.072(b)(1) (providing that outcry

statement is not inadmissible hearsay if statement's proponent provides adequate notice to adverse party). We affirm the trial court's judgments of conviction.

## BACKGROUND

Count I alleged that Mansolo sexually abused his granddaughters[1]—Valerie Watson and Amanda Watson[2]—from on or about October 6, 2013, through on or about May 31, 2016, by sexually assaulting Valerie and by touching both girls' genitals with his hand or fingers.[3] Counts II and III alleged that he touched the breasts of Valerie and Amanda, respectively, with the intent to arouse the sexual desire of any person.

The State's witnesses included Valerie and Amanda; their mother (Mother); and Taylor Hughes, a clinical social worker at their school. Mansolo presented testimony from his wife, Valerie and Amanda's grandmother (Grandmother).

Hughes testified about Amanda's December 1, 2022 outcry, which initiated the investigation leading to Mansolo's indictment. Hughes received a text from the school nurse informing her that Amanda, who was thirteen or fourteen years old at the time, was having an "emotional crisis." Amanda told Hughes that she was experiencing suicidal ideation and disclosed a "sexual assault" that had occurred when she was "between five and seven years old" and was living with her grandparents. According to Hughes, Amanda stated that her grandfather

---

[1] Mansolo was not Amanda and Valerie's biological grandfather but was married to their grandmother.

[2] Because the girls were minors at the time of the offenses, we refer to them by pseudonyms in the interest of privacy. *See* Tex. R. App. P. 9.10(a)(3).

[3] In October 2013, Valerie was six years old, and Amanda was five.

2

"would put her in the bath about every other day without her mother's knowledge and touch her breast and vaginal areas." Amanda also stated that Valerie was present for the abuse.

Following Amanda's outcry, Hughes called the police and Child Protective Services. On cross-examination, Hughes testified that Amanda had been having issues at home and had previously attempted suicide. Hughes also testified that trauma related to sexual abuse can manifest through suicidal ideation.

Mother testified about Valerie and Amanda's upbringing as well as an incident involving their being treated for lice. When the girls were born, they lived with their parents in an apartment in San Antonio. Valerie and Amanda would occasionally stay with Mansolo and Grandmother at their house in the Indian Hills neighborhood of Comal County, including for at least one week every summer. Mother's understanding was that the girls bathed themselves when visiting their grandparents.

In December 2014, the family moved into Mansolo and Grandmother's house before moving to a duplex in the same neighborhood around February 2015. In April or May of 2016, the family moved into a new house, which was a ten-minute drive from Mansolo and Grandmother's house. While living in both the duplex and the new house, the girls continued to stay with their grandparents from time to time.

When Valerie and Amanda—around five and four, respectively—were living in the San Antonio apartment, the girls got lice, for which they were treated by Mansolo and Grandmother in the apartment's bathroom; Mother was in another room. Grandmother was combing the girls' hair, and Mansolo was helping to rinse shampoo out of it. Amanda, who was naked, began screaming and crying and claimed that Mansolo had "touched her where she pees" and had been "rough with the rag." He denied touching Amanda and said that he was "just

trying to hurry before they ran out of hot water." Mother asked why he had been bathing Amanda, who knew how to bathe herself, and testified that his "explanation at the time made sense."

Mother testified that following Amanda's outcry in 2022, Amanda was taken to the hospital and stayed there for several days. Mother added that Valerie outcried after Amanda.

Valerie, who was seventeen years old at the time of trial, testified that before 2014, she and Amanda visited their grandparents mostly during the summer for a few days to two weeks. Valerie testified about two assaults that occurred at Mansolo and Grandmother's house when Valerie and Amanda were living in San Antonio; Valerie did not recall how old she had been. On the first occasion, she was sitting on Mansolo's lap on a couch in the dark. They were talking and facing the TV, which was off. She felt him take off her pants, flip her upside down, and lick her vagina. She testified that his tongue touched both the outside and inside of her vagina.

A few months later, Valerie and Amanda were sleeping on an air mattress at the foot of their grandparents' bed, and Valerie awoke and climbed into the bed. Mansolo turned to face her, grabbed her waist, and "kind of pinn[ed] her down." She tried to break free, and he rubbed his hand in a circle on her vagina—above her clothing—and touched her clitoris. Valerie remembered seeing a green light on the bedroom's air-conditioning unit.

In addition to the two assaults, Valerie testified that Mansolo consistently abused her and Amanda over "a few years" when bathing them in the bathroom at his and Grandmother's house. The first bathing incident took place a "few weeks" before the assault on the couch. He would touch Valerie with a rag or his hand while she was naked and "would focus a lot" on her and Amanda's breasts, butts, and vaginas. While touching Valerie's vagina, he

4

would look at her and Amanda and move his hand in a circular motion. He bathed and touched them "almost every time [they] came over," and there were "multiple months" between incidents. Although he did not touch Valerie's vagina during every bath, the times he did so sometimes "span[ned] over a period of months."

Valerie testified that the bathing stopped when her family moved out of the San Antonio apartment. She testified that she did not remember being treated for lice at the apartment but that she did not remember much from her childhood.

Amanda, who was fifteen years old at the time of trial, similarly testified that Mansolo bathed her and Valerie at his and Grandmother's house and touched Amanda's breasts and "lower part," by which she meant her vagina, with his hand or a cloth. The touching, which began when the girls lived in San Antonio, happened more than five times and "[m]ost of the time [they] had to take a bath." Occasionally, Grandmother would bathe the girls instead. Although Amanda testified that she did not think the abuse lasted more than a month, she explained that it began "when [she] was five" and "stopped happening when [they] moved into his house." She testified that she did not remember when her family moved out of the San Antonio apartment but was "pretty sure" she was six at the time.

Amanda described one incident in which Mansolo, who was dressed, had the girls stand next to each other outside of the bathtub. He first touched Valerie for around ten-to-fifteen minutes and then touched Amanda. After touching them, he made them leave the bathroom, locked the door, and remained in the bathroom "for a while."

Like Valerie, Amanda testified that she did not remember having lice at the San Antonio apartment. Amanda also testified that her outcry had been unplanned; while talking to Hughes, Amanda "started talking about everything that was going on, and it just kind of fell

5

out." After making the outcry, Amanda had gone to a treatment facility because she was having suicidal thoughts.

Grandmother testified about the lice incident, Valerie and Amanda's baths at Mansolo and Grandmother's house, and the girls' sleeping arrangements while at the house. Mother called Grandmother to assist with treating the girls for lice. Grandmother shampooed and combed Amanda's hair, and Mother did the same to Valerie's hair. When Grandmother finished, Mother asked Mansolo—who had been watching the treatment—to "take [Amanda] in the shower" and rinse the shampoo out of her hair. After doing so, he began bathing Amanda because "you don't want to keep the lice shampoo all over her body." While he was bathing Amanda, she screamed, "Ow," began crying, and told Grandmother that he had "hurt her down there." Mother and Grandmother spoke to Mansolo, who cried and told mother, "I will never bathe these girls again." Grandmother testified that after the incident, he refused even to go into the bathroom while she was bathing the girls and "just totally stayed out."

When Valerie and Amanda lived in San Antonio, they would stay at Mansolo and Grandmother's house for around a week each summer. Grandmother testified that Mansolo would remain in the living room watching TV while she bathed the girls. She never left the girls alone with him because "[t]hat was just her. That's how [she] was . . . . It wasn't that [she] thought anything." On cross-examination, however, she agreed that she had told police that she was "not going to deny it; he did help with bathing." She added, "I mean, but I was in there." She also agreed that when asked who bathed the girls, she told officers, "Sometimes I would[,] and sometimes he would."

When staying at Mansolo and Grandmother's house, Valerie and Amanda slept on an air mattress at the foot of their grandparents' bed. The bedroom had a window

air-conditioning unit with a green light that stayed on as well as a floor fan that made noise. At times, Grandmother and Amanda slept in the bed while Mansolo slept in the living room and Valerie slept on the air mattress. At other times, when Grandmother, Valerie, and Mansolo were watching TV in the living room, Grandmother would fall asleep on the couch or go to bed. She testified that she would have known if Valerie had gotten into the bed because "she was a very wild kicker." Grandmother testified that she loved Mansolo but would not protect him if she "had even one little inkling that he would" abuse the girls.

After hearing the evidence and the attorneys' arguments, the jury found Mansolo guilty of one count of continuous sexual abuse and two counts of indecency by sexual contact. He filed a motion for new trial arguing only that the verdicts were contrary to the law and the evidence and that the trial court had erred in overruling his motion for a directed verdict. The motion for new trial was overruled by operation of law. This appeal followed.

## DISCUSSION

### I. Double Jeopardy

Mansolo's first issue includes two distinct grounds, one constitutional and the other statutory. He contends that his indecency convictions were subsumed by his conviction for continuous sexual abuse in violation of the Double Jeopardy Clause. *See* U.S. Const. amend. V (providing that "[n]o person shall be subject for the same offense to be twice put in jeopardy of life or limb"); *Benton v. Maryland*, 395 U.S. 784, 787 (1969) (incorporating Double Jeopardy Clause into Fourteenth Amendment's Due Process Clause). He also contends that his indecency convictions were prohibited by subsection 21.02(e) of the Penal Code because the indicted acts occurred during the same time period as did the predicate offenses alleged in the

7

continuous-sexual-abuse charge, involved the same child-victim, and did not fall within one of the three statutory exceptions. *See* Tex. Penal Code § 21.02(e) (prohibiting, in single criminal action, dual convictions for continuous sexual abuse and listed offenses chargeable as "acts of sexual abuse" when based on conduct against same child during same time period).

The State correctly responds that neither of Mansolo's grounds was preserved for appellate review. Preservation of error is a systemic requirement on appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009) (citing *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005)). If an issue has not been preserved for appeal, we should not address the merits of that issue. *Id.*

To preserve a complaint for appellate review, there must ordinarily be a timely, specific objection and a ruling by the trial court. Tex. R. App. P. 33.1(a). "To be timely, a complaint must be made as soon as the grounds for complaint [are] apparent or should be apparent." *Wilson v. State*, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999). To be sufficiently specific, an objection need not employ "hypertechnical or formalistic . . . words or phrases," *Golliday v. State*, 560 S.W.3d 664, 670 (Tex. Crim. App. 2018); "magic words," *Ford*, 305 S.W.3d at 533; or a citation to a particular statute, *Laws v. State*, 640 S.W.3d 227, 229 (Tex. Crim. App. 2022) (quoting *Ford*, 305 S.W.3d at 533). Rather, the objecting party must "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it." *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009); *see Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). "This gives the trial judge and the opposing party an opportunity to correct the error." *Pena*, 285 S.W.3d at 464 (citing *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005)).

A review of the record shows that Mansolo did not raise a double-jeopardy or subsection 21.02(e) claim in a pretrial motion, at trial, or in his motion for new trial.[4] A multiple-punishments double-jeopardy claim, such as the one raised by Mansolo, is among the claims generally requiring a defendant to object at or before the time that the charge is submitted to the jury. *Gonzalez v. State*, 8 S.W.3d 640, 643–46 (Tex. Crim. App. 2000). However, double-jeopardy claims occupy a fairly unique position in the preservation landscape; the Court of Criminal Appeals has held that such claims "may be raised for the first time on appeal when (1) the undisputed facts show the double-jeopardy violation is clearly apparent from the face of the record, and (2) enforcement of the usual rules of procedural default serves no legitimate state interest." *Garfias v. State*, 424 S.W.3d 54, 57–58 (Tex. Crim. App. 2014); *see Langs v. State*, 183 S.W.3d 680, 682 (Tex. Crim. App. 2006) ("[T]he face of the trial court record must clearly show a double jeopardy violation before a defendant may successfully raise a 'multiple punishment' double jeopardy claim for the first time on appeal.").[5]

---

[4] Even if Mansolo's subsection 21.02(e) claim had been preserved, it is without merit. As noted above, the subsection generally prohibits a defendant from being convicted in a single trial of both continuous sexual abuse and an offense listed in subsection (c) if the offenses were committed against the same victim. Tex. Penal Code § 21.02(e). Indecency by breast-touching, however, is expressly excluded from the offenses listed in subsection (c). *Id.* § 21.02(c).

[5] In practice, this means that in order to determine whether a double-jeopardy claim may be raised for the first time on appeal, a court of appeals must address the claim's merits:

> Except where a jury is instructed on separate theories for an offense in the disjunctive, the clearly-apparent-from-the-record factor requires that we reach the merits of the claim before determining whether the claim is properly presented. Determining a threshold issue of procedure based on the claim's merits results in an analytical hiccup: If there is a valid double-jeopardy violation, it is sufficiently clear on the face of the record; if there is no double-jeopardy violation, it is not.

*Ex parte Marascio*, 471 S.W.3d 832, 837 (Tex. Crim. App. 2015) (Keasler, J., concurring).

We must therefore determine whether a double-jeopardy violation is clearly apparent from the face of the record in this case. In *Garfias*, the Court of Criminal Appeals explained that the relevant inquiry in a multiple-punishments case is whether the Legislature intended to authorize separate punishments under distinct statutes for the same conduct. *See* 424 S.W.3d at 58. To answer the question, a reviewing court must conduct an "elements" analysis, beginning with the *Blockburger* test, under which "two offenses are not the same if 'each provision requires proof of a fact which the other does not.'" *Philmon v. State*, 609 S.W.3d 532, 535 (Tex. Crim. App. 2020) (quoting *Bien v. State*, 550 S.W.3d 180, 184 (Tex. Crim. App. 2018)); *Garfias*, 424 S.W.3d at 58; *see Blockburger v. United States*, 284 U.S. 299, 304 (1932). In Texas, the *Blockburger* "same-elements" test is informed only by the pleadings, and a reviewing "court may not consider the evidence presented at trial" to make the determination. *Philmon*, 609 S.W.3d at 535–36.

Additional factors for determining legislative intent were set forth in a non-exhaustive list by the court in *Ervin v. State*:

> whether offenses are in the same statutory section; whether the offenses are phrased in the alternative; whether the offenses are named similarly; whether the offenses have common punishment ranges; whether the offenses have a common focus; whether the common focus tends to indicate a single instance of conduct; whether the elements that differ between the two offenses can be considered the same under an imputed theory of liability that would result in the offenses being considered the same under *Blockburger*; and whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double-jeopardy purposes.

*Bigon v. State*, 252 S.W.3d 360, 371 (Tex. Crim. App. 2008) (citing *Ervin v. State*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999)). The "best indicator of legislative intent when determining whether a multiple-punishments violation has occurred" is the "focus" or "gravamen" of the statutes in

10

question. *Garfias*, 424 S.W.3d at 59. A closely related factor "reviewing courts should consider when making an 'elements' analysis is the determination of the allowable unit of prosecution for the offenses in question." *Id.*; *see Hernandez v. State*, 556 S.W.3d 308, 327 (Tex. Crim. App. 2017) ("Unless the legislature expressly defines an allowable unit of prosecution for a particular criminal offense, the gravamen or gravamina of the offense best describe the allowable unit of prosecution."); *Byrd v. State*, 336 S.W.3d 242, 251 (Tex. Crim. App. 2011) ("The gravamen of the offense normally dictates the number of allowable units of prosecution.").

We recently performed an elements analysis for charges similar to those in this case and concluded that continuous sexual abuse and indecency by breast-touching are not the same offense for double-jeopardy purposes. *See Ex parte Hernandez*, --- S.W.3d ---, ----, No. 03-25-00008-CR, 2026 WL 77267, at *5 (Tex. App.—Austin 2026, no pet. h.). First, the offenses are codified in different sections of the Penal Code, are not similarly named, and carry different punishment ranges. *See Floyd v. State*, 714 S.W.3d 9, 14 (Tex. Crim. App. 2024) ("Different statutes are 'some indication of legislative intent to authorize multiple prosecutions simply because the offenses are separately defined in different statutes.'" (quoting *Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim. App. 1999))); *Ervin*, 991 S.W.2d at 814 (listing location of statutes as factor for determining legislative intent); *see also* Tex. Penal Code §§ 21.02(h) (providing that continuous sexual abuse "is a felony of the first degree, punishable by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years"), .11(d) (providing that indecency by sexual contact is second-degree felony punishable by imprisonment for two-to-twenty years).

Moreover, continuous sexual abuse and indecency by breast-touching require proof of different facts. *See Hernandez*, 2026 WL 77267, at *5. Continuous sexual abuse of a

11

young child "requires evidence of at least two acts of sexual abuse, perpetrated over the course of at least thirty days, against a child younger than 14 years of age." *Ramos v. State*, 636 S.W.3d 646, 653 (Tex. Crim. App. 2021) (distinguishing continuous sexual abuse and prohibited sexual conduct under *Blockburger* test). Indecency by breast-touching, conversely, requires a single act, a child-victim younger than seventeen, and "the intent to arouse or gratify the sexual desire of any person." *See* Tex. Penal Code § 21.11(a)(1), (c). It also requires that the defendant have touched the child-victim's breast. *Id.* § 21.11(c)(1). Notably, although indecency with a child by sexual contact may serve as a predicate offense for continuous sexual abuse, indecency by breast-touching is explicitly excluded from the list of qualifying statutes. *See id.* § 21.02(c)(2).

The offenses likewise have different focuses or gravamina that are not indicative of a single instance of conduct. *See Ervin*, 991 S.W.2d at 814. The gravamen of continuous sexual abuse is "'not a particular instance of one of the offenses listed in Section 21.02(c)' but rather 'the commission of at least two such offenses.'" *Love v. State*, 706 S.W.3d 584, 606 (Tex. App.—Austin 2024, pet. ref'd) (quoting *Ramos v. State*, 636 S.W.3d 646, 655–57 (Tex. Crim. App. 2021)); *see Stephenson v. State*, 673 S.W.3d 370, 390, 395 (Tex. App.—Fort Worth 2023, pet. ref'd) (noting that Court of Criminal Appeals "has yet to weigh in on the allowable unit of prosecution for continuous sexual abuse" and concluding that unit was "'repeated acts of sexual abuse that occur over an extended period of time [30 or more days in duration] against a single complainant.'" (quoting *Cisneros v. State*, 622 S.W.3d 511, 520 (Tex. App.—Corpus Christi–Edinburg 2021, no pet.)). By contrast, the gravamen of indecency by sexual contact is the nature of the prohibited conduct, namely, the breast-touching, *Loving v. State*, 401 S.W.3d 642, 649 (Tex. Crim. App. 2013), and the allowable unit of prosecution is each discrete act of touching,

12

even when the acts are part of the same transaction, *Hernandez v. State*, 631 S.W.3d 120, 124 (Tex. Crim. App. 2021). Sex offenses are "narrowly focused," and "statutes defining sex offenses minutely detail the prohibited conduct." *Id.* "The Legislature intended punishment for each prohibited act, not merely each 'incident.'" *Id.* The disparate focuses of continuous sexual abuse and indecency by breast-touching, and the fact that the latter is not a predicate offense of the former, are further reasons why the two offenses are not the same for double-jeopardy purposes. We conclude that no double-jeopardy violation is clearly apparent from the face of the record in this case. *See Garfias*, 424 S.W.3d at 57–58, 64; *Hernandez*, 2026 WL 77267, at *5–6.

For these reasons, we overrule Mansolo's first issue.

## II. Sufficiency of the Evidence

In his second issue, Mansolo contends that the evidence was insufficient to support the jury's guilty findings. Specifically, he argues that there was a "[l]ack of corroborating evidence regarding the aggravated sexual assault," which served as a potential predicate offense for the continuous-sexual-abuse charge, and that a "conviction based on indecency with a child also lacks support" because there was a "non-sexual explanation for the touching"; his conduct did not escalate, suggesting that it was "accidental or inadvertent"; and a rational juror could have found that he lacked the requisite intent. The State responds that Valerie's and Amanda's testimony alone was sufficient to support Mansolo's convictions and that both Hughes and Mother corroborated portions of the girls' testimony.

Due process requires that the State prove beyond a reasonable doubt every element of the crimes charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Lang v. State*, 561 S.W.3d 174, 179 (Tex. Crim. App. 2018). When reviewing the sufficiency of the evidence

to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We measure the sufficiency of the evidence against the hypothetically correct jury charge. *Garcia v. State*, 667 S.W.3d 756, 762 (Tex. Crim. App. 2023).

In conducting our review, we evaluate all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *Thompson v. State*, 408 S.W.3d 614, 627 (Tex. App.—Austin 2013, no pet.); *see Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). We presume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). Our concern is whether the factfinder reached a rational decision. *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018); *see Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (observing that reviewing court's role on appeal "'is restricted to guarding against the rare occurrence when a fact finder does not act rationally'" (quoting *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010))).

The trier of fact is the sole judge of the weight and credibility of the evidence. *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018); *see* Tex. Code Crim. Proc. art. 36.13 (explaining that "the jury is the exclusive judge of the facts"). Thus, when performing

14

an evidentiary-sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Arroyo*, 559 S.W.3d at 487. When the record supports conflicting reasonable inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that resolution. *Zuniga*, 551 S.W.3d at 733; *see Musacchio v. United States*, 577 U.S. 237, 243 (2016) (reaffirming that appellate sufficiency review "does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts'" (quoting *Jackson*, 443 U.S. at 319)). We must "'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). The factfinder may rely on common sense and apply observation and experience gained in ordinary affairs when drawing inferences from the evidence. *Acosta*, 429 S.W.3d at 625.

A person commits continuous sexual abuse of a young child if, "during a period that is thirty or more days in duration, he commits two or more acts of sexual abuse and, at the time of the commission of each act, he is seventeen years of age or older and the victim is a child younger than fourteen." *Garner v. State*, 523 S.W.3d 266, 271 (Tex. App.—Dallas 2017, no pet.); *see* Tex. Penal Code § 21.02(b). An "act of sexual abuse" includes aggravated sexual assault and indecency by genital-touching. *See* Tex. Penal Code § 21.02(c)(2), (4). When a jury is the trier of fact, jurors do not have to agree unanimously on the specific acts of sexual abuse or the exact dates when the acts were committed. *Id.* § 21.02(d). The offense has no mens rea element of its own; the requisite mental states are those for the predicate offenses. *See Love*, 706 S.W.3d at 603. Neither is the location of the acts, which need not occur in the same county,

15

an element of the offense. *Hinojosa v. State*, 555 S.W.3d 262, 267 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd).

As charged in this case, a person commits aggravated sexual assault of a child if, regardless of whether he knows the child's age at the time of the offense, he intentionally or knowingly causes the sexual organ of a child younger than fourteen years of age to contact his mouth.[6] *See* Tex. Penal Code § 22.021(a)(1)(B)(iii), (2)(B). "'Any penetration, no matter how slight, is sufficient to satisfy the requirements' of the aggravated sexual assault statute." *Cantu v. State*, 678 S.W.3d 331, 358 (Tex. App.—San Antonio 2023, no pet.) (quoting *Johnson v. State*, 449 S.W.2d 65, 68 (Tex. Crim. App. 1969)).

As charged in this case, a person commits indecency with a child if he engages in sexual contact with a child younger than seventeen years of age by touching, including through clothing, the child's breast or any part of the child's genitals with the intent to arouse or gratify the sexual desire of any person. *See* Tex. Penal Code § 21.11(a)(1), (c)(1). "[I]t is well established that 'the requisite specific intent to arouse or gratify the sexual desire of any person can be inferred from the defendant's conduct, his remarks and all surrounding circumstances.'" *Corporon v. State*, 586 S.W.3d 550, 562 (Tex. App.—Austin 2019, no pet.) (quoting *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981)); *see Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998) ("Mental states are almost always inferred from acts and words."). "Intent can be inferred from conduct alone, and no oral expression of intent or visible evidence of sexual arousal is necessary." *Tienda v. State*, 479 S.W.3d 863, 873 (Tex. App.—Eastland 2015, no pet.).

---

[6] Aggravated sexual assault and indecency by genital-touching were charged as predicate offenses for continuous sexual abuse of a young child in this case. *See* Tex. Penal Code § 21.02(c).

16

For all three offenses—continuous sexual abuse, aggravated sexual assault, and indecency by both genital- and breast-touching—the uncorroborated testimony of the child-victim alone is sufficient to support a conviction. Tex. Code Crim. Proc. art. 38.07(a), (b)(1); *see Turner v. State*, 573 S.W.3d 455, 459 (Tex. App.—Amarillo 2019, no pet.) ("[T]he uncorroborated testimony of a child sexual abuse victim alone is sufficient to support a conviction for either the offense of continuous sexual abuse or the underlying predicate offenses of indecency with a child or sexual assault."). Medical or physical evidence is not required. *Turner*, 573 S.W.3d at 459. Moreover, courts "liberally construe the testimony of child sexual abuse victims," *Cantu*, 678 S.W.3d at 358, and outcry testimony retains probative value even if contradicted, especially if other witnesses corroborate it, *see Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (citing *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991)).

Both Valerie and Amanda testified that Mansolo touched their vaginas and breasts with his hand or a cloth on many occasions while bathing them. Valerie also testified that he touched her vagina over her clothing with his hand during the assault in his and Grandmother's bed. A reasonable juror could have inferred from the girls' testimony that at least two of the vaginal-touching incidents occurred during a period that was thirty or more days in duration. *Jackson*, 443 U.S. at 318; *Laster*, 275 S.W.3d at 517. Valerie testified that Mansolo bathed and touched them "almost every time [they] came over," that there were "multiple months" between incidents and "probably a few years" between the first and last incidents, and that the occasions on which he touched her vagina would sometimes "span over a period of months."

Although Amanda testified that she did not think that the abuse lasted more than a month, she also testified that it began when she was five and ended when the family moved out

of their San Antonio apartment and into Mansolo and Grandmother's house. Mother testified that Amanda was born in October 2008; thus, Amanda would have been five in 2013. As the family moved into Mansolo and Grandmother's house in December 2014, a reasonable juror could have concluded that the incidents of vaginal touching occurred over a period of more than a year. Additionally, Hughes testified that Amanda had reported being the victim of a sexual assault that occurred when she was "between five and seven years old." To the extent that Amanda's testimony was internally inconsistent or contradicted Valerie's testimony, the jury was the sole judge of credibility, and we presume that it resolved any conflicts in favor of its verdict. *See Zuniga*, 551 S.W.3d at 733; *see also Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010) (stating that trier of fact "is entitled to believe or disbelieve all or part of the witness's testimony—even if that testimony is uncontroverted—because [it] has the opportunity to observe the witness's demeanor and appearance").

A rational juror could likewise have found one of the predicate offenses for continuous sexual abuse to be satisfied by Mansolo licking Valerie's vagina during the couch assault, which she testified occurred a few months before the assault in the bed and a few weeks after the first incident of touching in the bathroom. Alternatively, the juror could have found that Mansolo committed a predicate offense when he touched Amanda's vagina during the lice incident, which, according to Mother, occurred when Amanda was four, approximately a year before Amanda testified that the bathroom touching began. Mother testified that Amanda had known how to bathe herself at the time, and Grandmother testified that Amanda alleged Mansolo had "hurt her down there." Asked if she would agree that it would be difficult for a child to get lice shampoo on her vagina, Grandmother testified only, "I don't agree with you or disagree with

18

you on that." Although neither Valerie nor Amanda remembered the lice incident, it was again the jury's responsibility to resolve questions of credibility.

While the girls' testimony alone was sufficient to support the jury's findings of guilt, *see* Tex. Code Crim. Proc. art. 38.07; *Turner*, 573 S.W.3d at 459, their allegations were corroborated by testimony from Hughes, Mother, and Grandmother. Hughes testified that Amanda's suicidal ideation could have resulted from trauma caused by sexual abuse and that "her experience with the sexual assault and her outcry with that was something she had experienced." Mother testified that no one had told her that Mansolo was bathing her daughters and that Valerie and Amanda became more withdrawn and isolated as they got older. Grandmother made statements to police indicating that Mansolo bathed the girls. Moreover, she testified that Valerie would sit on Mansolo's lap, that the two were sometimes alone on the couch together, that Valerie and Amanda slept on an air mattress at the foot of the bed, and that the bedroom had an air-conditioning unit with a green light.

On this record, a rational juror could have found from Mansolo's conduct that he possessed the necessary mental states to commit aggravated sexual assault and indecency with a child by sexual contact. *See Corporon*, 586 S.W.3d at 562; *Tienda*, 479 S.W.3d at 873. Although Mansolo argues that the evidence against him could have been greater and that there was a "valid other non-sexual explanation for the touching," we consider only "the combined and cumulative force of *all admitted evidence* in the light most favorable to the conviction to determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found each element of the offense beyond a reasonable doubt." *Ramsey v. State*, 473 S.W.3d 805, 808 (Tex. Crim. App. 2015) (emphasis added); *see Jackson*, 443 U.S. at 313. What is more, "[b]eyond a reasonable doubt . . . does not require the State to disprove every

conceivable alternative to a defendant's guilt," and the State is no longer required to negate every other reasonable hypothesis raised by the evidence. *Ramsey*, 473 S.W.3d at 808 & n.3; *see Ingerson v. State*, 559 S.W.3d 501, 509 (Tex. Crim. App. 2018) ("Focusing on other reasonable explanations for evidence improperly applies the abrogated reasonable-alternative-hypothesis construct.").

For the foregoing reasons, we conclude that the evidence in this case was sufficient to support the jury's findings of guilt. We overrule Mansolo's second issue.

## III. Jury-Charge Error

Mansolo's third and fourth issues involve alleged error in the guilt-innocence jury charge. A trial court is statutorily obligated to instruct the jury on the "law applicable to the case." *See* Tex. Code Crim. Proc. art. 36.14; *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018). The jury charge should tell the jury what law applies and how it applies to the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007).

"Jury charges contain both an abstract section and an application section." *See Torres v. State*, 691 S.W.3d 138, 147 (Tex. App.—Austin 2024, pet. ref'd). The abstract portion of a charge serves as a glossary to explain the meanings of concepts and terms used in the application portion of the charge but "does not authorize conviction on its own." *Id.* "The application paragraph is the portion of the jury charge that applies the pertinent penal law, abstract definitions, and general legal principles to the facts and indictment allegations of a given case." *Id.*; *see Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). Because the application paragraph "specifies the factual circumstances under which the jury should convict or acquit, it is the 'heart and soul' of the jury charge." *Vasquez*, 389 S.W.3d at 367. In reviewing a

charge for possible error, we "'must examine the charge as a whole rather than as a series of isolated and unrelated statements.'" *Id.* (quoting *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995)).

We review alleged jury-charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022). When, as here, the defendant does not make a timely objection during the proceedings below, we must determine whether the record establishes that the error caused him "egregious harm." *See Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020). "Neither party bears a burden of production or persuasion with respect to [the] harm analysis, the question being simply what the record demonstrates." *Hollander v. State*, 414 S.W.3d 746, 749–50 (Tex. Crim. App. 2013).

### A.      Subsection 21.02(c)(2) Limiting Instruction

Mansolo's third issue centers on the limited scope of indecency with a child by sexual contact when used as a predicate offense, or "act of sexual abuse," for a charge of continuous sexual abuse of a young child. *See* Tex. Penal Code § 22.11(c). When indecency by sexual contact is charged as a standalone offense—such as in counts two and three in this case— "sexual contact" includes touching of "the anus, breast, or any part of the genitals of a child." *See id.* § 22.11(c)(1). However, when indecency by sexual contact is charged as a predicate offense for continuous sexual abuse, breast-touching is expressly excluded as a manner of committing indecency by sexual contact. *Id.* § 21.02(c)(2). Thus, one potential "act of sexual abuse" that may serve as a predicate offense to prove continuous sexual abuse is "indecency with a child[,] . . . if the actor committed the offense in a manner other than by touching, including

21

touching through clothing, the breast of a child." *Id.* Mansolo contends that because the jury charge did not explicitly instruct the jury that indecency by breast-touching is not a predicate offense for continuous sexual abuse, jurors might have convicted him of continuous sexual abuse "for touching the two complainant[s'] breasts during the shower incident while disbelieving the testimony regarding the other acts."

We agree with the State that when viewed as a whole, the jury charge's structure and language clearly conveyed the understanding that indecency by breast-touching—while sufficient to support convictions for the standalone allegations of indecency by sexual contact—could not serve as a predicate offense for the continuous-sexual-abuse allegation. The charge included a section with the heading "Specific Instructions for Each Count," below which were subheadings for "I. Continuous Sexual Abuse of a Young Child" and "II. Indecency with a Child by Contact." Under each subheading, the charge was further subdivided into abstract and application portions.

The abstract portion of the charge for continuous sexual abuse included the following instructions:

> Our law provides that a person commits the offense of Continuous Sexual Abuse of a Young Child if, during a period that is 30 days or more in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims and, at the time of the commission of each of the acts of sexual abuse, the person was l7 years of age or older and the victim is a child younger than 14 years of age.
>
> . . . .
>
> "Act of sexual abuse" includes the offense of Indecency with a Child, as defined herein.
>
> A person commits the offense of Indecency with a Child if, with a child younger than seventeen (l7) years of age, the person engages in sexual contact with the child or causes the child to engage in sexual contact.

22

"Sexual contact" means the following act, if committed with the intent to arouse or gratify the sexual desire of any person: any touching by a person, including touching through the clothing, of any part of the genitals of a child.

We note that the definition of "sexual contact" mirrored the indictment by limiting indecency by sexual contact—when used a predicate offense for continuous sexual abuse—to genital-touching. The abstract portion similarly instructed the jury that to find Mansolo guilty of continuous sexual abuse, it "must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse, *as that term has been previously defined*." (emphasis added).

The application portion of the continuous-sexual-abuse charge likewise required jurors, before they could find Mansolo guilty, to find beyond a reasonable doubt that he

committed two or more acts of sexual abuse against Valerie Watson [Pseudonym] and Amanda Watson [Pseudonym], said acts of sexual abuse having been violations of one or more of the following penal laws, to-wit:

. . . .

Indecency with a child, to—wit: the said Lonnie Mansolo, did then and there, with intent to arouse or gratify the sexual desire of any person, engage in sexual contact with the said Valerie Watson [Pseudonym] by touching any part of the genitals of the said Valerie Watson [Pseudonym] with the hand or fingers of the said Lonnie Mansolo,

Indecency with a child, to-wit: the said Lonnie Mansolo, did then and there, with intent to arouse or gratify the sexual desire of any person, engage in sexual contact with the said Amanda Watson [Pseudonym] by touching any part of the genitals of the said Amanda Watson [Pseudonym] with the hand or fingers of the said Lonnie Mansolo . . . .

Conversely, the abstract portion of the indecency charges included both breast- and genital-touching in the definition of "sexual contact": "'Sexual contact' means the following act, if committed with the intent to arouse or gratify the sexual desire of any person: any

23

touching by a person, including touching through the clothing, of the breast, or any part of the genitals of a child." And the application portion of the indecency charges instructed jurors that in order to find Mansolo guilty, they must find beyond a reasonable doubt that he "engage[d] in sexual contact . . . by touching the breasts of" Valerie and Amanda.

There is no evidence that the jury did not follow the trial court's instructions regarding the different meanings of "sexual contact," so we presume that the jury followed the court's instructions. *See Allison v. State*, 666 S.W.3d 750, 765 (Tex. Crim. App. 2023). The charge did not risk creating the impression that indecency by breast-touching could serve as a predicate offense for continuous sexual abuse and, moreover, allowed jurors to use indecency by sexual contact as a predicate offense only if they found beyond a reasonable doubt that Mansolo touched Valerie's or Amanda's *genitals* with his hand or fingers. The distinct scopes of "sexual contact" with respect to continuous sexual abuse and indecency by sexual contact were further illustrated by the abstract and application portions of the standalone indecency charges, which—unlike the continuous-sexual-abuse charge—authorized a guilty finding based on breast-touching. Based on the facts in this case, the trial court did not err by not explicitly instructing the jury that indecency by breast-touching is not a predicate offense for continuous sexual abuse of a young child. *But cf. Braggs v. State*, No. 02-23-00166-CR, 2024 WL 1451984, at *4–5 (Tex. App.—Fort Worth Apr. 4, 2024, pet. ref'd) (mem. op., not designated for publication) ("Certainly, including a breast-touching carve-out would be the safest approach, and the trial court would have committed no error in so doing.").

Having concluded that the trial court did not err, we need not reach the issue of harm. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) ("Our first duty in analyzing a jury-charge issue is to decide whether error exists. Then, if we find error, we

analyze that error for harm."); *Posey v. State*, 966 S.W.2d 57, 61 (Tex. Crim. App. 1998) ("*Almanza* [harm-analysis] does not apply unless the appellate court first finds 'error' in the jury charge."). We overrule Mansolo's third issue.

**B.     Definition of "During"**

In his fourth issue, Mansolo contends that the trial court erred by failing to define the term "during." *See* Tex. Penal Code § 21.02(b)(1). He cites a concurrence to our sister court's decision in *Perez v. State* for the proposition that in a continuous-sexual-abuse case, "the jury charge should . . . include[] the definition of 'during.'" *See* 689 S.W.3d 369, 385 (Tex. App.—Corpus Christi–Edinburg 2024, no pet.) (Contreras, C.J., concurring). The State responds that non-statutory definitions are generally disfavored, that the charge in this case tracked section 21.02 of the Penal Code, and that we should instead be guided by the majority opinion in *Perez*. Alternatively, the State argues that Mansolo was not harmed by the definition's omission.

The jury charge in *Perez* contained the following instructions:

1.

A person commits the offense of Continuous Sexual Abuse of a Child if:

(1) During a period that is 30 days or more in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims;

(2) At the time of the commission of each of the acts of sexual abuse, the actor was 17 years of age or older and the victim is a child younger than 14 years of age.

. . . .

4.

You are instructed that members of the jury are not required to agree unanimously on which specific acts of sexual abuse, if any, were committed by the Defendant

25

or the exact date when those acts were committed, if any. The jury must agree unanimously that the Defendant, during a period that was 30 or more days in duration, committed two or more acts of sexual abuse as that term has been previously defined.

5.

Now if you find from the evidence beyond a reasonable doubt that the Defendant, ORLANDO REYES PEREZ, did then and there, in Hidalgo County, Texas, during a period that was 30 or more days in duration, to-wit: from on or about the 15th day of September, 2017, to on or about the 1st day of December, 2018, when the defendant was 17 years of age or older, committed two or more acts of sexual abuse against MARIA GARCIA, a pseudonym, a child younger than 14 years of age, namely aggravated sexual assault of a child and indecency with a child, then you will find the Defendant guilty of the offense of Continuous Sexual Abuse of a Child as charged in this indictment.

*Id.* at 379–80; *see* Tex. Penal Code § 21.02(b)(1). The court of appeals concluded that the instruction tracked the statutory language and was therefore not erroneous, explaining:

Perez has failed to explain how this language misstates the law. The charge expressly required a finding that, during a period that was thirty or more days in duration, Perez committed two or more acts of sexual abuse, and thus the charge reflects the language and structure of the offense as provided by the Penal Code. We disagree with any suggestion that delineating the period of continuous abuse with specific dates that were themselves more than thirty days apart somehow nullified the abstract portion of the charge or the immediately preceding requirement in the application paragraph that Perez committed two or more acts of sexual abuse "during a period that was 30 or more days in duration."

*Perez*, 689 S.W.3d at 379–80. (internal citations omitted).

In her concurrence, Chief Justice Contreras stated that although the charge tracked the statute "precisely," the statutory language was insufficient because it "did not explicitly inform the jury that there must be 'at least 28 days' between the days of the first and last acts of abuse." *Id.* at 383; *see Turner*, 573 S.W.3d at 462 (determining that charge requiring two or more acts of sexual abuse "on or about June 1, 2013 through August 1, 2013, . . . during a period

26

that was 30 days or more in duration" was erroneous because it did not "make it clear that the first and last acts must occur thirty or more days apart"); *Smith v. State*, 340 S.W.3d 41, 50 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (concluding that charge allowing jury to find defendant guilty if he committed two or more acts of sexual abuse "*on or about the 1st day of December, 2007, through the 1st day of September, 2008, which said time period being a period that was 30 days or more in duration*" "lack[ed] clarity" and allowed for conviction "regardless of whether the acts occurred at least 30 days apart"); *see also Committee on Pattern Jury Charges*, State Bar of Tex., *Texas Criminal Pattern Jury Charges: Crimes Against Persons & Property* ("CPJC") ch. 21.2 (2024) (calling meaning of durational element "[p]erhaps the major ambiguity" in section 21.02 and recommending that trial court instruct jury, "With regard to element 2, you must all agree that at least thirty days passed between the first and last acts of sexual abuse committed by the defendant"); *Lozano v. State*, 706 S.W.3d 429, 458 (Tex. App.—Austin 2024, no pet.) (relying on pattern jury charges when addressing jury-charge error). At present, there is a split among our sister courts regarding the necessity of such an instruction.[7] *See Poor v. State*, 715 S.W.3d 15, 31 (Tex. App.—Eastland 2024, pet. ref'd) (recognizing split and agreeing with "majority" of courts of appeals that absence of instruction was not erroneous); *Lewis v. State*, 693 S.W.3d 453, 462–64 (Tex. App.—Houston [14th Dist.] 2023, pet. ref'd) (discussing split and holding that absence of instruction was not erroneous).

From the substance of his briefed argument, Mansolo's reference to the "definition" of "during" appears to challenge the absence of the type of instruction considered in

---

[7] This Court has not yet weighed in with a published decision. One court of appeals has decided that "the appellate courts' conflicting decisions" about how to approach instructions on the durational element "counsels in favor of proceeding to a harm analysis" without making an error determination. *Pelcastre v. State*, 654 S.W.3d 579, 588 (Tex. App.—Houston [14th Dist.] 2022, pet. ref'd).

*Smith*, *Turner*, and *Perez*, namely, an instruction that at least twenty-eight (or thirty) days must pass between the first and last acts of sexual abuse. *See* Tex. R. App. P. 38.9 (requiring courts of appeals to construe briefing rules liberally). We first note that analyses of the appropriateness of such an instruction are highly fact-dependent; they involve a close reading of the particular jury charge in each case to determine whether it could have misled the jury and whether it appeared to authorize a guilty finding if jurors found that a defendant committed two or more act of sexual abuse within a thirty-day period. *See, e.g.*, *Lewis*, 693 S.W.3d at 461; *Perez*, 689 S.W.3d at 379–80; *Turner*, 573 S.W.3d at 462; *Smith*, 340 S.W.3d at 50.

In reviewing the omission of what we might call a *Smith* instruction, courts of appeals place heavy emphasis on whether the charge was potentially confusing or misleading, *see Pelcastre v. State*, 654 S.W.3d 579, 587 (Tex. App.—Houston [14th Dist.] 2022, pet. ref'd) ("Appellate courts have split as to whether [the durational element's statutory language] is sufficiently confusing to the jury to constitute charge error."), and whether the charge tracked the statutory language of section 21.02, *see Lewis*, 693 S.W.3d at 464 ("Generally, a jury charge that tracks statutory language is not erroneous."). *But cf. Navarro v. State*, 469 S.W.3d 687, 699 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) ("A charge will not prevent confusion if the statutory text on which it is based has a variable meaning in the eyes of the jury.").

The application portion of the continuous-sexual-abuse charge in this case, contrary to the State's assertion, did not track the language of section 21.02. Indeed, it did not include the statutory durational element at all. The application portion provided, in relevant part, only:

> Now, if you find from the evidence beyond a reasonable doubt that *on or about the 6th day of October, 2013, through on or about the 31st day of May, 2016*, in

Comal County, Texas, Lonnie Mansolo, hereinafter styled Defendant, committed two or more acts of sexual abuse against Valerie Watson [Pseudonym] and Amanda Watson [Pseudonym] . . . then you will find the defendant guilty of the offense of Continuous Sexual Abuse of a Young Child as charged in Count I of the indictment and so answer on the verdict form provided.

(emphasis added).[8]

We conclude that under the facts of this case, the trial court's failure to instruct the jury that at least thirty days must pass between the first and last acts of sexual abuse resulted in a charge that failed to set forth the law applicable to the case, *see* Tex. Code Crim. Proc. art. 36.14, and that potentially confused and misled the jury, *see Reeves v. State*, 420 S.W.3d 812, 818 (Tex. Crim. App. 2013) ("'It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and to prevent confusion.'" (quoting *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977)). We thus proceed to a consideration of harm. *See Alcoser*, 663 S.W.3d at 165.

### C.    Harm

Errors that result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory. *Gonzalez*, 610 S.W.3d at 27; *see Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019) (stating that egregious harm occurs when error "created such harm that the appellant was deprived of a fair and impartial trial"). The appellant must have suffered actual, and not merely theoretical, harm. *Gonzalez*, 610 S.W.3d at 27. The determination depends "on the unique circumstances

---

[8] The charge was thus erroneous irrespective of the *Smith* instruction's omission. *See Niles v. State*, 555 S.W.3d 562, 564 (Tex. Crim. App. 2018) ("The failure to include a jury instruction on an element of an offense included within the charging instrument amounts to jury charge error subject to a harm analysis."). However, Mansolo did not challenge the jury charge on the ground that it omitted a statutory element.

of" each case and "is factual in nature." *Saenz v. State*, 479 S.W.3d 939, 947 (Tex. App.—San Antonio 2015, pet. ref'd); *see Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002) (stating "that egregious harm is a difficult standard" to meet). In determining whether egregious harm exists, we must evaluate the entire record in light of four factors: 1) the complete jury charge; 2) the arguments of counsel; 3) the entirety of the evidence, including the contested issues and weight of the probative evidence; and 4) any other relevant factors revealed by the record as a whole. *Gonzalez*, 610 S.W.3d at 27; *Hollander*, 414 S.W.3d at 749–50.

### i. *Complete Jury Charge*

The trial court twice instructed the jury about the durational element in the abstract portion of the continuous-sexual-abuse charge:

> Our law provides that a person commits the offense of Continuous Sexual Abuse of a Young Child if, during a period that is 30 days or more in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims and, at the time of the commission of each of the acts of sexual abuse, the person was 17 years of age or older and the victim is a child younger than 14 years of age.
>
> . . . .
>
> In order to find the defendant guilty of the offense of Continuous Sexual Abuse of a Young Child, you are instructed that members of the jury are not required to agree unanimously on which specific acts of sexual abuse, if any, were committed by the defendant or the exact date when those acts were committed, if any. However, in order to find the defendant guilty of the offense of Continuous Sexual Abuse of a Young Child, you must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse, as that term has been previously defined.

The latter instruction immediately preceded the charge's application portion. At least two of our sister courts have underscored the importance of similar language. The majority in *Perez* disagreed with

30

any suggestion that delineating the period of continuous abuse with specific dates that were themselves more than thirty days apart somehow nullified the abstract portion of the charge or the immediately preceding requirement in the application paragraph that Perez committed two or more acts of sexual abuse "during a period that was 30 or more days in duration."

689 S.W.3d at 380. And the *Pelcastre* court, performing a harm analysis, noted, "While appellant contends the charge contains error in the application paragraph for the continuous-sexual-abuse offense, the charge twice states the correct standard, tracking the language of the statute, earlier in the charge." 654 S.W.3d at 588. The inclusion of the durational element in the abstract portion—in language tracking the statute—is particularly important when it is remembered that the error here concerns the omission of a *Smith* instruction from the charge's abstract portion and that Mansolo has not alleged error in the application paragraph. This factor thus weighs against finding egregious harm.

### ii. Arguments of counsel

In the prosecutors' closing argument and rebuttal, they went beyond the statutory text and repeatedly reminded jurors that at least thirty days must have passed between two of the acts of sexual abuse, including by referencing an extensive discussion of the issue during voir dire:

- Some people had some concerns about, well, if I heard it happened 29 times in a row inside of 30 days, I'd want to find him guilty. And those people are no longer here because they couldn't follow the law. The law is that—during a period 30 days or more in duration. That's what the law is.

  And so, you look at that. You look at the offense and you ask yourselves, did two or more acts occur outside of that 30-day window?

31

- Whether it's four, four, and four [jurors]; six and six. It doesn't matter. As long as you unanimously say, outside of 30 days and two separate acts, you find him guilty of that.

- [A]fter y'all have unanimously agreed that two acts occurred outside of 30 days, I'm asking you to sign that he's guilty.

- As long as every one of you agrees that two acts occurred outside that 30-day period, no matter what those two acts were, that's enough to satisfy the elements.

- If you remember from voir dire, the date doesn't matter. As long as the incidents occurred before April 12th of 2023, it doesn't matter, assuming that you believe that the incidents occurred 30 days apart.

Consequently, we conclude that this factor also weighs against finding egregious harm. *See Campbell v. State*, 664 S.W.3d 240, 253 (Tex. Crim. App. 2022) (noting that State's argument "undoubtedly helped to remedy the alleged error in the charge"); *French v. State*, 563 S.W.3d 228, 238 (Tex. Crim. App. 2018) (explaining that State's closing arguments focused jury's attention in way that rendered charge error harmless); *Gelinas v. State*, 398 S.W.3d 703, 709 (Tex. Crim. App. 2013) (plurality op.) (emphasizing "that jury arguments bear significantly on an *Almanza* analysis").

### iii.     State of the Evidence

The evidence in this case was thoroughly discussed in our review of Mansolo's second issue. Notably, the evidence against him was strong, involving outcries from two child-victims, portions of whose testimony were corroborated by additional witnesses, including Mansolo's wife, who testified for the defense. *See Turner*, 573 S.W.3d at 463 (finding that defendant was not egregiously harmed in part because "the jury heard the mutually confirming testimony of two witnesses" and because "the fact that both witnesses told the same general story

substantially increases the weight and probative value of both witnesses' testimony," "substantial parts" of which were corroborated).

Valerie's and Amanda's testimony was especially probative with respect to the durational element. Valerie testified that the vaginal touching occurred over a period of years and that the occasions on which Mansolo touched her vagina would sometimes "span over a period of months." She also testified that the couch assault, in which he licked her vagina, occurred a few months before the bed assault, in which he touched it. Amanda testified that the vaginal touching in the bathroom began when she was five and ended when the family moved out of its San Antonio apartment in December 2014, when she was six. She told Hughes that she was sexually assaulted between the ages of five and seven. The lice incident, in which both Mother and Grandmother testified that Mansolo touched Amanda's vagina, occurred when Amanda was four. Mansolo did not present affirmative evidence that the acts of abuse occurred over a period of fewer than thirty days. *See Pelcastre*, 654 S.W.3d at 589; *Smith*, 340 S.W.3d at 51. "Because the evidence shows that the abuse occurred over at least several months of time, this weighs against a finding of egregious harm." *Smith*, 340 S.W.3d at 51.

### iv. *Other Relevant Information*

The significance of the durational element featured heavily in voir dire and was discussed by both sides. *See Torres*, 691 S.W.3d at 154–55 (discussing whether jury-charge error's subject arose during voir dire). As characterized by the State, the element meant "for example, you have March 1st, an act occurs, and then you have March 31st, an act occurs. It has to be outside of that 30-day period for purposes of this statute." When some veniremembers expressed a potential inability to follow the law regarding the durational element, the State again

33

cautioned that in order to find Mansolo guilty, the eventual jury must "all agree that two of those acts occurred outside of that 30-day period." Defense counsel reiterated that "it needs to be proven that it happened 30 days apart" and questioned veniremembers as to whether they could follow the law "if [the State] just proved that it happened on multiple occasions from under 30 days."

The indictment, which was read to the jury during Mansolo's arraignment, tracked the statutory language and charged that "on or about the 6th day of October 2013, through on or about the 31st day of May of 2016, during a period that was 30 days or more in duration, [he] committed two or more acts of sexual abuse against Valerie Watson (pseudonym), and Amanda Watson (pseudonym)." The jury charge in turn instructed jurors to find Mansolo guilty or not guilty "of the offense of Continuous Sexual Abuse of a Young Child as charged in Count I of the indictment." *See Smith*, 340 S.W.3d at 52 (stating, as part of harm analysis, that when indictment was read, defendant "did not object to the phrasing of the indictment or claim he lacked notice").

Lastly, during the jury's deliberation, jurors submitted a question asking when Amanda testified that the abuse stopped and explained that there was disagreement about her testimony. The trial court isolated the relevant testimony and provided it to the jury. Given that the charge instructed jurors that the specific timing of the offenses was unimportant so long as they occurred before the indictment, it would be reasonable to infer from the jurors' question that they understood the durational element and the importance of ensuring that two predicate offenses occurred over a period of at least thirty days. At a minimum, there is nothing in the record to indicate that jurors were confused by the durational element.

34

For these reasons, this factor—like the others—weighs against finding egregious harm. Because all four factors weigh against finding egregious harm, we conclude that Mansolo was not egregiously harmed by the *Smith* instruction's omission. *See Gonzalez*, 610 S.W.3d at 27. We overrule his fourth issue.

## IV.    Notice of Outcry Witness

In his fifth issue, Mansolo contends that the State failed to provide him with statutorily required notice identifying its outcry witness in advance of trial. *See* Tex. Code Crim. Proc. art. 38.072, § 2(b). The State responds that the issue was not preserved and that, alternatively, Mansolo was not harmed by the lack of notice.

Error under article 38.072 is subject to the preservation requirement codified in Rule of Appellate Procedure 33.1(a). *See* Tex. R. App. P. 33.1(a); *see also Brown v. State*, No. 04-23-00081-CR, 2024 WL 3167354, at *5 (Tex. App.—San Antonio June 26, 2024, no pet.) (mem. op., not designated for publication) (concluding that defendant failed to preserve complaint for appeal because "[a]t no point during the [outcry] hearing did [he] object on the basis that he did not receive adequate notice of the State's intention to call C.J.'s grandmother as an outcry witness as required by article 38.072"); *Taylor v. State*, 509 S.W.3d 468, 473–74 (Tex. App.—Austin 2015, pet. ref'd) (concluding that by failing to object, defendant "waived any alleged error regarding the admission of evidence concerning the outcry statements"); *Bargas*, 252 S.W.3d at 895 (declining to reach merits of outcry-notice claim because defendant "failed to preserve error by objecting at the outcry hearing"); *Josey v. State*, 97 S.W.3d 687, 692 (Tex. App.—Texarkana 2003, no pet.) ("Josey did not raise this issue of lack of proper outcry notice of any witnesses before the trial court, and it is therefore not preserved for review."). A defendant

35

who makes a hearsay objection during the outcry hearing preserves error for any failure by the State to comply with the mandatory requirements of article 38.072. *See Long v. State*, 800 S.W.2d 545, 547–48 (Tex. Crim. App. 1990); *Yebio v. State*, 87 S.W.3d 193, 197–98 (Tex. App.—Texarkana 2002, pet. ref'd).

Here, Mansolo made neither a notice objection nor a hearsay objection during the outcry hearing.[9] Defense counsel announced only an intention conditionally to object on hearsay grounds if Hughes mentioned statements made by Valerie to Amanda during Hughes's testimony before the jury.[10] Counsel's only other objection during the hearing was to a lack of notice were Hughes to testify as an expert witness.

Because Mansolo did not object during the hearing to the State's failure to comply with subsection 2(b) of article 38.072 or on the basis of hearsay, we agree with the State that the issue was not preserved. *See Taylor*, 509 S.W.3d at 473–74. We therefore overrule his fifth issue.

## CONCLUSION

Having overruled Mansolo's issues, we affirm the trial court's judgments of conviction.

---

[9] The State explained that it would not call an outcry witness for Valerie because "she should be able to testify to what [the State] need[ed] her to testify to . . . without relying on the outcry—or bringing in an outcry witness for that purpose."

[10] Defense counsel stated, "And just to clarify, Judge, right now when she was testifying, I will be having objections to hearsay if she does mention what [Amanda]—what [Valerie] was telling [Amanda] about this."

_____

Rosa Lopez Theofanis, Justice

Before Justices Triana, Theofanis, and Crump

Affirmed

Filed:   January 30, 2026

Do Not Publish